### In re DIRECTORS OF FRONTIER & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1913.)

1. RAILROADS (§ 47*)—CONSTRUCTION—PROCEEDINGS—PUBLIC SERVICE COMMISSION.

Railroad Law (Consol. Laws 1910, c. 49) § 9, prohibits any railroad corporation from exercising powers conferred by law until the directors have a copy of the certificate of incorporation published and until the commission shall certify that such conditions have been complied with, and that public convenience and necessity require the construction of such railroad "as proposed in said certificate of incorporation." Public Service Commission Law (Consol. Laws 1910, c. 48) § 53, provides that without having first obtained permission of the commission no corporation shall begin the construction of a railroad for which, before this act becomes a law a certificate of public convenience and necessity shall not have been granted by the board of railroad commissioners, nor shall a corporation exercise any franchise without having first obtained permission of the proper commission. Railroad Law, § 16, provides that, before the commencement of construction, it shall file a detailed location of the route, and notify the occupant of each parcel on the route who shall have 15 days to apply for a change of location, and section 24 provides a means to the company for changing the route by filing a certificate thereof without notice to the commission. *Held* that, upon the determination of the convenience and necessity of a proposed route, the commission could consider any routes which do not vary the location contained in the articles of incorporation, irrespective of the route de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

scribed in the petition, and notwithstanding section 89, which merely refers to the manner in which new railroads shall cross streets and highways.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 106–108; Dec. Dig. § 47.*]

2. RAILROADS (§ 53*)—CONSTRUCTION—REGULATION.

A rule by the public service commission requiring the filing of a map identifying the proposed route of any railroad upon an application for certificate of public convenience and necessity has not the effect of a statute, and does not limit the commission's power.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 121, 122; Dec. Dig. § 53.*]

3. RAILROADS (§ 47*)—CONSTRUCTION—CERTIFICATE OF NECESSITY.

In granting a certificate of public convenience and necessity for constructing a railroad pursuant to Public Service Commission Law (Consol. Laws 1910, c. 48) § 53, the public service commission acts solely as guardian of the public interest, and such certificate does not control the precise route of the railroad; such certificate being a mere preliminary requirement.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 106–108; Dec. Dig. § 47.*]

In the matter of the application of the directors of the Frontier & Western Railroad Company for an order directing the Public Service Commission, Second District, to issue certificate of public convenience and necessity. On original motion for an order directing the issuance of the certificate after the application was denied. Determination of the Public Service Commission overruled, and application remitted to the commissioners for their consideration.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Edward W. Hatch, of New York City, for the motion.
Edward P. White, of Buffalo, for King Sewing Mach. Co.
Maurice C. Spratt, of Buffalo, for New York C. & H. R. R. Co. et al.
George Clinton, of Buffalo, for Taxpayers and Residents.
Harry D. Sanders, of Buffalo, for City of Buffalo.
John L. Romer, of Buffalo, for Walter H. Schoellkopf et al.
Harry D. Williams, of Buffalo, for Wood & Brooks Co.
Willis H. Tennant, of Buffalo, for Guillaume Reusens, opposed.

LAMBERT, J. By this application it is sought to compel the issuance to the Frontier & Western Railroad Company of a certificate of public convenience and a necessity, as provided by section 9 of the Railroad Law (Consol. Laws 1910, c. 49) and section 53 of the Public Service Commissions Law (Consol. Laws 1910, c. 48). This line of railroad is proposed to commence in the town of Tonawanda, Erie county, at the point where the projected line of the Buffalo Frontier Terminal Railroad approaches nearest to the International Bridge over the Niagara river at Buffalo. Applicant's line is intended to connect such Buffalo Frontier Terminal Railroad with said International Bridge, across which the lines of several railroads gain access to the city of Buffalo from Canada. The benefits to be anticipated from the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

construction of this line are very similar to, and in a measure dependent upon, those sought to be accomplished by the construction of the Buffalo Frontier Terminal Railroad, for which latter road a certificate was recently granted by the commission. It is, in fact, conceded that the two projects are portions of a single general plan. The aim of the two constructions is the betterment of freight traffic conditions in and around the city of Buffalo. The application of the Buffalo Frontier Terminal Railroad, for its certificate, has been before this court, and the conditions there involved and sought to be remedied are fully discussed in the opinions then written. See Matter of Buffalo Frontier Terminal Railroad, 131 App. Div. 503, 115 N. Y. Supp. 483. Those same conditions are involved here, with the additional feature of the outlet provided by the proposed connection with the International Bridge. There is no question made in this proceeding as to the regularity of the application to the commission for the certificate here sought; nor was such certificate denied for noncompliance with any statutory requirement.

The applicant's articles of incorporation comply literally with the requirements of section 5 of the Railroad Law. They define the termini of the contemplated railroad, give its length, with reasonable certainty, and specify the county, within which the road is to be built. The petition to the commission also complies with all the requirements of section 9 of the Railroad Law and section 53 of the Public Service Commissions Law, and, in addition thereto, identifies a contemplated route between such termini, which route is described in detail by means of map and profile attached to such petition and made a part thereof. Numerous and lengthy hearings before the commission developed bitter opposition to the location of the route as shown in such map and profile filed. This opposition came almost entirely from certain closely built up sections of the Black Rock district of Buffalo. It was eventually suggested, by the commission, that it might be possible to adopt a different route, thus meeting, to some extent at least, the objections urged. Thereafter two different routes were considered, each varying materially from the one identified in the petition. But eventually the application was denied and the certificate refused. The order of the commission discloses that the certificate was refused, as based upon the route specified in the petition; and distinctly announces that the commission concluded as a matter of law that it had no right to consider any other route. This court has reached a contrary conclusion as to the powers of such commission, but we do not deem it advisable to pass upon the question of public necessity and convenience, although we undoubtedly have the power to do so, until the commission shall have passed upon that question in the exercise of the more plenary powers which we here hold it to possess.

[1] This leaves to be here discussed the single question of the power of the commission to consider other routes than that identified in the petition.

By section 9 of the Railroad Law it is provided:

"No railroad corporation formed after May eighteenth, eighteen hundred and ninety-two, under the laws of this state shall exercise the powers conferred

by law, upon such corporation or begin the construction of its road, until the directors shall cause a copy of the certificate of incorporation to be published in one or more newspapers in each county in which the road is proposed to be located, at least once a week for three successive weeks and shall file satisfactory proof thereof with the public service commission; nor until the commission shall certify that the foregoing conditions have been complied with, and also that public convenience and a necessity require the construction of said railroad, as proposed in said certificate of incorporation. * * * "

And section 53 of the Public Service Commissions Law provides:

"Without first having obtained the permission and approval of the proper commission no railroad corporation, street railroad corporation or common carrier shall begin the construction of a railroad or street railroad, or any extension thereof, for which, prior to the time then this act becomes a law, a certificate of public convenience and necessity shall not have been granted by the board of railroad commissioners, or where prior to said time said corporation or common carrier shall not have become entitled by virtue of its compliance with the provisions of the railroad law to begin such construction; nor, except as above provided in this section, shall any such corporation or common carrier exercise any franchise or right under any provision of the railroad law, or of any other law, not heretofore lawfully exercised, without first having obtained the permission and approval of the proper commission. * * * "

It is to be noted that the wording of the two sections varies markedly. From this it is argued that the latter section is broader in its scope, and confers upon the commission more extensive powers of inquiry than those conferred by section 9 of the Railroad Law. It is clearly broad enough, so that the powers of the commission and the scope of its inquiry as set forth in section 9 of the Railroad Law are not limited or cut down thereby, and we do not find it advisable to consider its scope further, in view of the admonition of the Court of Appeals in the case of People ex rel. South Shore Traction Co., 196 N. Y. 218, 89 N. E. 460, where in writing upon a kindred subject that court said:

"It is wise, therefore, in each case, which arises under the statute, to take great care to go no further in the expression of judicial opinion than is requisite for the decision of the precise question presented."

Section 9 of the Railroad Law does not specify the particular form of petition to be made for the certificate thereby required. By express terms the line of the railroad, as described in the articles of incorporation, is made the basis for the application. And it is equally clear that the certificate is made to relate only to the line of such road as so described. Nor is there any express statutory requirement that the petition be accompanied by a route more definitely fixed or identified than as required to be stated in the articles of incorporation.

It must be conceded, however, that the investigation by the commission, if intelligently made, necessarily requires inquiry as to the route proposed to be taken. Such choice of route might have a material bearing upon the question of public necessity and convenience. Such inquiry, almost of necessity, requires the use of a map or maps, and hence the provision found in section 9, but not included in the above quotation, requiring the certification of all maps by the commission to this court upon this and similar applications. We cannot, however,

accede to the contention of the contestants that this provision as to the certification of maps is to be given a construction requiring the definite location of a route by the filing of a map thereof with the petition. To so hold requires the reading into the statute of some thing not found therein, and something not essential to the carrying out of the general scheme and plan of the legislation.

Likely it was the fact that an intelligent consideration of the application for a certificate required investigation as to the route of the road that lead to the adoption by the commission of a rule requiring the filing of a map identifying such route. Rule 20.

[2] Such a rule, while expedient as a matter of practice and clearly within the power of the commission to require, does not have the effect of a statutory enactment, nor limit the power of the body which promulgated that rule. In fact, it does not purport to define the grounds upon which the conclusion of the commission shall be based. The question of public necessity and convenience presented upon an application of this character is defined by the statute, and is not dependent upon the form of the petition. The office of the petition is to present the jurisdictional facts, and, when they are presented, the question to be determined as formulated by the statute, and is, invariably, "Does public convenience and a necessity require the construction of the railroad described in the articles of incorporation?"

[3] The requirement of this certificate is a mere preliminary. Its granting does not mean that the road will necessarily be built. In making its determination the function of the commission is exercised solely as guardian of the public weal (People ex rel. D. & H. Co. v. Stevens, 197 N. Y. 1, 90 N. E. 60), and it was not intended to make such commission the body to determine the precise location of the road. The control of such precise location is vested elsewhere, as will be hereinafter pointed out. The correctness of the above conclusion is manifested by other provisions of the Railroad Law. By section 16 it is provided that prior to the commencement of the construction or the institution of condemnation for the right of way the railroad shall file in the office of the county clerk a detailed location of its contemplated route and serve notice of such filing upon the occupant of each parcel of land crossed by such route. Such occupants are then allowed 15 days to apply to the court for a change in the location of such route, and provision is made for the appointment of a commission to determine such requested changes. This section, it is clear, has application to a time subsequent to the granting of the certificate here sought, and it makes no provision for consent by or notice to the public service commission of any of the proceedings thereby permitted. And, again, by section 24 of the Railroad Law, a means is provided to the railroad company for effecting a change in its route by filing a certificate thereof, and this, too, without any notice to or consent by the commission. This section also clearly refers to a time subsequent to the granting of the certificate here sought. The general plan of this legislation would seem conclusive that a fixed and definite route is not required to be adopted at the time of the application for the certificate, and that the question of the route is material at that

stage of the proceeding only in so far as investigation of a route or routes becomes essential to the intelligent determination of the public necessity and convenience. Nor do we deem section 89 to be in contravention of the foregoing. That section has reference only to the manner in which new railroads shall cross streets and highways. Its application is clearly subsequent to that of section 9, as no such question arises upon an application under section 9, nor until the road has approached the commencement of construction.

We do not find, nor are we referred to any decisions, directly decisive of the question here presented. People ex rel. Depew R. Co. v. Commissioners, 4 App. Div. 259, 38 N. Y. Supp. 528, 861, is claimed by contestants to be controlling here. In that case two rival companies applied for a certificate to construct a road from Depew to Blasdell. The termini of the two proposed roads were identical, and their length the same. Both were standard gauge steam roads, and had the same amount of capital stock. The railroad commission was there put to the choice between the two; it being held that the public necessity and convenience did not require the construction of more than one such road. The opinion in that case, we read, to determine nothing further than that the question of the route, was a proper one for the commission to consider. It is not decisive of the power of the commission to consider more than one route, nor that the route considered determines the route upon which the road must be built with greater definiteness than is provided in the articles of incorporation. Such questions were not there involved.

We are also referred to a class of cases illustrated by People ex rel. N. Y. C. & H. R. R. Co. v. Commissioners, 92 App. Div. 126. 87 N. Y. Supp. 334, and Matter of T. U. T. R. R. Co., 116 App. Div. 56, 101 N. Y. Supp. 107, as sustaining the conclusion reached by the commission. Each of those cases is that of a street surface railroad. The description of the route of such a railroad in the articles of incorporation is regulated by a different provision of law. Section 5, subd. 11, of the Railroad Law. Such are required to indicate in their articles of incorporation the particular streets, avenues, and highways in which the road is to be constructed. This is in addition to the provision applicable to a steam road, requiring the statement of the termini, length, and the counties through which the road is to run. The street surface railroad cases only go to the extent of holding that no deviation from the route as described in the certificate of incorporation is allowed. This is the same rule to be applied here, as it is not contended that any deviation from the route indicated in petitioner's certificate of incorporation would be permitted. While the result reached in the street surface railroad cases is the direction of the inquiry and certificate of the commission to a more fixed, definite, and certain route than in the case of a steam railroad, such result is the effect of the difference in the provisions of statute applicable, rather than in the rule to be applied, and such holdings recognize the scope of the inquiry to be, as the public necessity and convenience to be accommodated by the road described in the certificate of incorporation.

It is urged with earnestness that this conclusion would work a great injury to property owners along the line of a route considered, other than that identified in the petition. It is claimed that such owners are not afforded their day in court to be heard upon the question of the granting of the certificate. There is no merit in this contention. The statute does not provide for notice to any property owner other than such as may be said to be given by the publication of the articles of incorporation. Those articles identify the route only in the general manner provided for by section 5 of the Railroad Law, and do not pretend to indicate a precise location. No specific notice is required upon this hearing preliminary in its nature. If, however, the commission should deem such a notice desirable, ample means to its accomplishment, are at its command, by way of order made, to such end. It cannot be seriously claimed that the granting of this certificate is in any sense the taking of property by the corporation or the public, and ample provisions for the protection of the interests of the property owners is afforded by section 16 of the Railroad Law.

It is further urged that our conclusion removes from the commission all control over the selection of the route, and that such is contrary to the spirit of the statute. The answer to this suggestion is afforded by the statute. Railroads, like other corporations, are the creatures of the statute, and the Legislature in creating them had ample power to limit their powers and grant them privileges in such manner as it deemed best. This supervisory power it could lawfully delegate to the commission for the accomplishment of any desired constitutional purpose, but we are not at liberty to enlarge upon those delegated powers or to infer their existence when they are not declared or necessarily implied in reaching the avowed aim of the statute. The aim of this statute is plainly declared and as plainly limited to the consideration of the route as described in the incorporation certificate, and we are not to infer that more specific control over the route was intended to be vested in the commission.

We therefore hold that upon application for a certificate of public convenience and a necessity by a steam railroad corporation the question of such convenience and necessity is to be determined with reference to the railroad as identified in the articles of incorporation of such company, and that, upon such determination, the commission has the right to consider any route or routes, which do not vary the location of the road as identified in the articles of incorporation.

The determination and order of the public service commission should be overruled and the application for a certificate of public convenience and a necessity should be remitted to such commissioners for its determination thereon, under the rules above indicated, without costs of this proceeding to any party. All concur.